**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ISAIAH WHITE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION 05-0731-WS-M** |
| | ) |
| **MICROSOFT CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter is before the Court on defendant Microsoft Corporation's Motion to Dismiss Under FRCP 12(b)(6) (doc. 24).[1]  Upon review of the parties' filings relating to that Motion, the undersigned entered an Order (doc. 33) on August 3, 2006, converting said Motion to a Motion for Summary Judgment on the grounds that Microsoft's arguments for dismissal of the express warranty claim hinged on materials extrinsic to the Complaint.  In accordance with Eleventh Circuit precedent, the parties were given notice of the conversion and a reasonable opportunity to supplement the record and to file additional memoranda of law.  Both sides have availed themselves of this opportunity.  (*See* docs. 37, 38.)  Microsoft's converted Rule 56 Motion is now ripe for disposition.[2]

**I.      Overview of the Case.**

Plaintiff Isaiah White commenced this putative class action pertaining to the Xbox 360 game console by filing a Complaint (doc. 1) against defendant Microsoft Corporation in this

---

[1]      Also pending is plaintiff's Motion for Leave to Supplement Record (doc. 39). Plaintiff requests permission to file an amended declaration from Isaiah White to include a declaration under penalty of perjury that the statements therein are true and correct to the best of his knowledge, information and belief.  A proposed amended declaration was filed separately on September 11, 2006.  (*See* doc. 40.)  The requested supplementation is not substantive; therefore, for cause shown, the Motion for Leave to Supplement Record is **granted**.

[2]      Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

District Court on December 20, 2005.  In his Amended and Restated Class Action Complaint (doc. 23), plaintiff alleges that Microsoft defectively designed and/or manufactured this product so that it overheats, rendering the game console unstable and causing it to crash or lock up. (Amended Complaint, ¶ 2.)  Plaintiff further alleges that the Xbox 360 damages game discs by scratching them and rendering them unusable.  (*Id.*, ¶ 3.)  According to the Amended Complaint, Microsoft "failed and/or refused to replace Plaintiff's game console" when he brought the defect to its attention, pursuant to the 90-day warranty that accompanied the product.  (*Id.*, ¶¶ 5-6.) Plaintiff maintains that only after the Complaint was filed did Microsoft "eventually offer to 'cure' the defect by replacing his console," but that plaintiff rejected this offer "as it would conflict with his duties as a class representative."  (*Id.*, ¶¶ 8-9.)  On this basis, the Amended Complaint asserts the following state-law causes of action against Microsoft: (a) a claim of unjust enrichment, alleging that Microsoft accepted and retained payment from plaintiff despite knowledge of design and/or manufacturing defects in the Xbox 360 (*Id.*, ¶¶ 32-38); (b) a claim of breach of express warranty, alleging that "Microsoft has refused and/or denied responsibility to Plaintiff and the class members under the terms of its express warranty" (*Id.*, ¶¶ 40-42); and (c) a claim of breach of implied warranty, alleging that Microsoft "impliedly warranted the game console was fit for its intended purpose," but that the product overheats, locks up, and damages games played on the unit.  (*Id.*, ¶¶ 44-46.)

## II.   Background Facts.[3]

### A.   *The Warranty.*

Plaintiff Isaiah White purchased an Xbox 360 game console in Mobile, Alabama, on November 23, 2005, the first day that this product was made available to the public.  (White Decl., at 1.)  The Xbox 360 is designed, manufactured and marketed by defendant Microsoft Corporation.  (Amended Complaint (doc. 23), ¶ 2.)  So enthusiastic was White for the launch of the Xbox 360 that he waited in line outside a Target retail store for approximately 10 hours to purchase the product.  (White Decl., at 1.)

---

[3]   The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005).

The Xbox 360 unit that White purchased included an instruction manual with a limited warranty (the "Warranty"), which provided in relevant part as follows:

> "Subject to the terms and conditions of this Limited Warranty, Microsoft warrants to you only (the original purchaser), that under normal use and service the Xbox Product will substantially conform with the accompanying printed user instruction materials for a period of 90 days starting as of the date of your sales receipt (the "Warranty Period")."
>
> *     *     *
>
> "You must also ... [f]ollow Microsoft's shipping and other instructions if it determines that all or part of your Xbox Product requires return for repair or replacement. ... ***Failure to follow the above instructions may result in delays, cause you to incur additional charges, or may void your warranty.***"
>
> *     *     *
>
> "During the Warranty Period and subject to applicable Law, Microsoft will, at its option and as your exclusive remedy for breach of this Limited Warranty or any implied warranties: Repair or replace a defective Xbox Product, or [f]ollowing return of your Xbox Product, make payment to you for the allowable damages that you incur in reasonable reliance but only up to the amount of the purchase price that you paid for your Xbox Product. This refund may include a deduction for depreciation based on your actual use."
>
> *     *     *
>
> "Any replacement parts or Xbox Product will be new or refurbished or serviceably used, comparable in function and performance to the original part or Xbox Product and warranted for the remainder of the original Warranty Period or 30 days from the date of shipment of the Xbox Product back to you, whichever is longer."

(Declaration of Patrick King, ¶ 6 & Exh. A, at 5-6.) Although he has not submitted the actual warranty document that accompanied his unit, plaintiff neither contests nor refutes defendant's showing that this Warranty was in fact included with the Xbox 360 game console that he purchased in November 2005.

### B.     *Plaintiff's Pre-Litigation Contacts with Microsoft.*

Approximately one week after acquiring his Xbox 360, White began experiencing difficulties with the unit, which displayed a propensity to "lock-up," requiring him to shut the system down and reboot, after which it would again malfunction within a short time. (White Decl., at 1-2.) So White contacted Microsoft using the toll-free customer service telephone number that was provided with the Warranty. (*Id.* at 2.) According to White, the Microsoft customer service representative with whom he spoke informed him that his "problem was unique" and that "nothing about [his] experiences was a common occurrence among other Xbox

-3-

customers." (*Id.*)[4]  The representative also informed him that the "freezing" problem would resolve itself if he positioned the unit with sufficient airflow and used clean, undamaged game discs. (*Id.*)  White asserts that he "asked the customer service representative what rights [he] had under the warranty," but does not indicate how the representative responded. (*Id.*)

After following the representative's instructions, White continued to experience malfunctions with his game console. (*Id.* at 4.)  He called Microsoft customer service a second time, and indicated that his Xbox 360 had crashed again. (*Id.*)  Plaintiff asked the representative "what Microsoft would do to get [him] a game console that worked properly." (*Id.*)  The representative responded that White "would have to send [his] Xbox back to Microsoft where they would repair the unit and return it to [him]." (*Id.*)  Upon learning that this process might take two weeks or more, White informed the customer service representative that he did not think it reasonable to wait that long after he had spent 10 hours waiting in line to buy his game console in the first place. (*Id.*)  The Microsoft representative also confirmed during this conversation that Microsoft was experiencing "many complaints and customer returns of defective units" and that it was sending such customers "used and rebuilt units just to keep up with the demand." (*Id.* at 5.)  When White asked point-blank what Microsoft would do if he sent in his game console, the representative responded that Microsoft would examine the unit and, if it was found to be defective, replace it "with a previously used and rebuilt unit." (*Id.* at 5-6.)[5]  According to White, the representative declined his request to speak with a supervisor or anyone else. (*Id.* at 6.)

---

[4]     White insinuates that these assurances were false, and submits as supporting evidence some 293 pages of printouts from Internet discussion fora containing numerous consumer accounts of similar malfunctions. (White Decl., at 3 & Exh. A.)  At best, such evidence (which is almost certainly inadmissible and incapable of being reduced to admissible form) is tangentially relevant to the issues before the Court on summary judgment and the causes of action raised by plaintiff.

[5]     White's Declaration expresses consternation with the notion that Microsoft would send him a used, rebuilt unit.  This issue appears to lie at the heart of his dissatisfaction towards Microsoft, as he argues, "As I read the terms of the warranty, there do not appear to be any provisions giving Microsoft the right to replace a defective unit with a previously used and rebuilt one." (White Decl., at 5.)  However, as set forth in Section II.A., *supra*, the Warranty prominently featured just such a provision.

Microsoft's records, which are uncontroverted, reflect that this customer service call occurred on December 2, 2005, and that the representative informed White that because the troubleshooting suggestions had not solved the problem a repair order would be placed for his system. (Delcambre Decl., at Exh. 2.) At 2:05 p.m. that very day, the representative entered a repair order and arranged for shipment of an empty box to White via DHL to facilitate the return of his game console to Microsoft. (*Id.* at Exh. 3.)[6] The shipping container was sent on December 2, 2005, and DHL records confirm that it was delivered to White's home address at 12:37 p.m. on December 5, 2005. (*Id.* at Exhs. 3-5.)[7] Microsoft records also show that plaintiff failed to return his Xbox 360. The repair order was ultimately canceled in February 2006 when White's purportedly defective game console was never received for warranty service. (*Id.* at Exh. 3.)

In the meantime, plaintiff placed several additional customer service calls to Microsoft. In the first of these, he again inquired "what Microsoft would do for [him] under the terms of the warranty." (White Decl., at 6.) For the second time, he was informed that he would have to mail in his game console to allow Microsoft to inspect it and "inform [him] of its decision." (*Id.*) In response, White asserted that it was unreasonable for Microsoft to expect him to send in his game console, after all of his "frustrations" (which he described as his initial 10-hour wait to purchase the product, the "lock-up" problem, and reports that he had read on the Internet about

---

[6]     Microsoft's evidence is that its regular practice as of December 2005 was to send shipping boxes to its customers for use in returning malfunctioning Xbox 360 game consoles to the company upon creation of a repair order. (Delcambre Decl., ¶ 12.)

[7]     This fact is actually a composite of several unchallenged defense exhibits. The first is a note in a customer service log for White showing "Box Shipped to Customer on 2005-12-02 15:07:07," and reflecting carrier tracking number 7819225411. (Exh. 3.) The second is a DHL tracking record for number 7819225411, confirming "shipment delivered" at "Residence Door" of 8160 Realco Ln in Mobile, Alabama. (Exh. 4.) The third is a Microsoft record showing that White's address on file was 8160 Realco Lane in Citronelle, Alabama, which lies in Mobile County. (Exh. 5.) Public records reflect that there is no 8160 Realco Lane address in the City of Mobile. Considered in the aggregate, then, these exhibits admit of only one conclusion, to-wit: That Microsoft sent a shipping box to White at his home address on December 2, 2005, to facilitate the return of his Xbox 360 unit for warranty service, and that this shipping box was in fact delivered to that address three days later.

widespread Xbox 360 problems and replacement of defective units with "rebuilt" consoles). (*Id.*)  A short time later, plaintiff called the customer service line again because he had read rumors on the Internet that Microsoft might be giving away free games to compensate disgruntled Xbox 360 customers.  (*Id.* at 7.)[8]  During this conversation, a supervisor informed White yet again that if he sent in his unit and if Microsoft found it to be defective, then it would replace the unit "with a previously used and rebuilt unit."  (*Id.* at 8.)[9]  The supervisor offered White a free game disc to compensate him for his inconvenience, an accommodation which White deemed a "jok[e]" because the free game offered was for the old Xbox system, not the new Xbox 360 system.  (*Id.*)[10]  White asked for a free game disc for the new Xbox 360 system, but the supervisor told him that Microsoft would not make such an offer.  (Id. at 9.)  White then advised the supervisor that he did not want an old game disc, or a rebuilt machine, but instead he wanted a new and unused game console.  (*Id.*)  He told the supervisor that it was unacceptable to send his Xbox 360 in and have Microsoft replace it with a previously used and rebuilt unit.  (*Id.*)

Following this string of communications, plaintiff left a voice-mail message for the supervisor, faxed a letter to "VP of Team Xbox," and left another voice-mail message for a Mr. Bach, whose title and affiliation with Microsoft are unclear.  (*Id.* at 9-10.)[11]  When he received

---

[8]        In this call, it was evident that White was seeking additional compensation from Microsoft, above and beyond any remedies spelled out in the Warranty.  This reading of White's Declaration is corroborated by Microsoft customer service records, which describe White as "furious that he needs to send console in for repair and wants to be compensated for his troubles."  (Delcambre Decl., at Exh. 6.)

[9]        Again, White balks "that Microsoft's warranty information said nothing about replacement with previously used and rebuilt units."  (*Id.*)  Again, White overlooks the clear language of the Warranty to the contrary.  *See* Section II.A., *supra*.

[10]       Plaintiff's account of this communication is corroborated by Microsoft's records, which reflect a conversation on December 3, 2005 in which White indicated that he didn't "think it[']s right that he has to send it in and not expect anything.  Had to stand in line for hours in the cold.  He Expects some kind of compensation for [his] trouble.  Says manager has the nerve to offer a sorry game.  Willing to take this as far as he has to."  (Delcambre Aff., at Exh. 6.)

[11]       White explains that the purpose of his call to the supervisor was to reopen the issue that "the terms of the pre-packaged warranty say nothing about Microsoft having the option to replace a defective unit with a previously used and rebuilt one."  (*Id.* at 9.)  This premise is

no reply, White contacted his attorney.  (*Id.* at 10-11.)  The instant litigation followed, with the Complaint being filed on December 20, 2005.

> ### C.      *Post-Complaint Offers of Performance.*

Three weeks later, on January 12, 2006, Microsoft overnighted a letter to White (by and through his counsel of record) from the company's Global Xbox Escalation Manager, Paul Tatman.  (Tatman Decl., ¶ 5 & Exh. A.)  The letter provided White with another shipping box for his game console, as well as a pre-paid shipping label to Microsoft.  Tatman requested that White return his Xbox 360 in the box provided, and explained that "Microsoft will inspect it and then repair or replace it, or provide a full refund, if it does not substantially conform with the printed user instruction materials that accompanied it.  There will be no charge to you."  (*Id.*)  This letter and offer of performance post-dated the Complaint, but occurred well within the 90-day warranty window for White's unit.

Plaintiff's attorney responded with a letter dated February 24, 2006, six weeks after Microsoft's offer of performance and after the 90-day warranty period had expired.  (Dean Decl., ¶ 4 & Exh. A.)  That letter stated that White "appreciate[d] Microsoft's offer," but that "he cannot accept this offer unless it is offered to the class itself."  (*Id.*)  The letter concluded with a "request" (made on White's behalf as well as purportedly on behalf of a class) that Microsoft replace "all defective Xbox 360 game consoles with new non-defective consoles."  (*Id.*)  This correspondence sparked a prompt letter of clarification from Microsoft's lawyer, reminding plaintiff's counsel of the Warranty's terms and Microsoft's record of "provid[ing] a shipping box and a prepaid shipping label, all at no charge, to all Xbox 360 owners in North America when ... it appears that Microsoft needs to inspect their consoles."  (Dean Decl., ¶ 6 & Exh. B.)  The letter invited White "to take advantage of the same service that Microsoft provides at no charge to other owners by sending Microsoft his console."  (*Id.*)  At no time did White comply with Microsoft's requests to ship his Xbox 360 to it in the defendant-provided shipping container for inspection and appropriate action under the terms of the Warranty.[12]

---

mistaken, and irreconcilable with clear Warranty language to the contrary.

[12]      Much later, on June 26, 2006, plaintiff's counsel transmitted a written request that Microsoft inspect every putative class member's Xbox 360 game console, and "thereafter

III.    **Summary Judgment Standard.**

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

IV.    **Analysis.**

As discussed *supra*, the Amended Complaint purports to assert claims against Microsoft on theories of express warranty, unjust enrichment and implied warranty.  Microsoft seeks

---

perform its obligation under the Limited warranty to repair, replace or refund every class member's Xbox."  (Opposition Brief (doc. 31), at Exh. A.)  Of course, this request was made four months after the 90-day warranty period had expired for White, after he had repeatedly rejected the company's efforts to perform under the Warranty.  Moreover, the request demanded relief on a classwide basis, rather than simply on White's behalf.  As such, the request undoubtedly encompassed untold numbers of persons who either (a) similarly had purchased units more than 90 days previously, such that their warranty was expired; or (b) had never reported any problems to Microsoft, even though the Warranty unambiguously places the onus on the customer to call Microsoft to receive instructions for obtaining warranty service.  (Tatman Decl., Exh. A, at 5.)  Thus, plaintiff's request would effectively oblige Microsoft to waive both the 90-day sunset date of its Warranty and the customer's obligation to contact the company to obtain warranty service for countless numbers of Xbox 360 purchasers nationwide.  Not surprisingly, Microsoft was not agreeable to such an arrangement.

dismissal of all three causes of action, as a matter of law.

**A.      Express Warranty Claim.**

The Amended Complaint alleges that Microsoft expressly warranted the Xbox 360 game console to be free of material defects, then refused and denied responsibility to White under the terms of the Warranty, despite knowledge of the product's manufacturing or design defects. (Amended Complaint, ¶¶ 40-42.)  In briefing this issue, plaintiff argues that this claim should survive because (a) the Warranty's limited remedy provisions are unenforceable; and (b) Microsoft failed to perform its obligations under the Warranty.

*1.      Validity / Enforceability of Limited Remedy.*

The Warranty provided that, if an Xbox product failed to substantially conform to the user instruction materials within 90 days after purchase, Microsoft would provide, at its option, the exclusive remedy of repairing or replacing the defective product, or refunding the purchase price.  Under Washington law, warranty agreements "may limit or alter the measure of damages recoverable ..., as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts."  Wash.Rev. Code § 62A.2-719(1)(a); *see also Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 707 (9th Cir. 1990) (noting that such limitations of remedies are permitted by Washington's UCC).[13] That said, a consumer may pursue other remedies "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose."  Wash.Rev. Code § 62A.2-719(2); *see also Milgard*, 902 F.2d at 707 (limited remedy provision must be viewed against backdrop of § 62A.2-719(2)).

As an initial proposition, plaintiff argues that the limited remedy provisions of the Warranty are ineffectual and unenforceable.  Plaintiff never identifies what other remedies he seeks to pursue, and there is no indication that he has sustained any consequential or incidental

---

[13]      The parties concur that the express warranty claim must be assessed under Washington law, and both sides rely on Washington authorities.  (Defendant's Brief (doc. 25), at 10 n.5; Opposition Brief (doc. 31), at 12.)  This is because the Warranty includes a provision labeled "Governing Law," and stating, in part: "If you acquired the Product in the United States, the laws of the State of Washington, U.S.A., will apply to this Limited Warranty."  (King Decl., Exh. A at 7.)

damages as a result of the alleged breach.  Nonetheless, plaintiff unleashes a slew of undifferentiated, scattershot legal arguments under Washington law, to-wit: that the limited remedy is invalid because it deprived White of the substantive value of his bargain, because Microsoft may have acted with bad faith or negligence in honoring its warranty commitments, because the remedy provision was futile, because Microsoft failed to make appropriate efforts to resolve the problem, because the limited remedy is *prima facie* unconscionable, and because Microsoft may have insufficient facilities in Washington to repair or replace defective game consoles.  (Opposition Brief, at 15-22.)[14]  Not surprisingly, Microsoft objects to all of these six sub-contentions, each of which will be analyzed separately.

First, White maintains that a limited remedy may fail of its essential purpose when it "deprives a party of the substantive value of its bargain, due to an undiscoverable defect." (Opposition Brief, at 17.)  Washington law indeed so provides.  *See Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash.App. 1997) ("When a limitation of remedy clause deprives a party of the substantive value of its bargain, it is ineffectual. ... A limitation of remedies fails its essential purpose when the defect is latent and non-discoverable upon reasonable inspection.").  The *Cox* court explained that where a farmer purchased and planted certified winter wheat seed which suffered from a latent defect at the germination level and failed to produce an adequate crop, the limited remedy failed of its essential purpose and was unenforceable.  But the instant action is a far cry from *Cox*.  Microsoft's limited remedy provided for repair or replacement of a defective Xbox 360, or refund of the purchase price.  In so doing, this limited remedy would actually ensure that White received the substantive value of his bargain, not deprive him of it.  Plaintiff's conclusory argument to the contrary fails to explain how the proffered remedy in the Warranty could possibly be viewed as depriving him of the

---

[14]    The clear thrust of plaintiff's claims in this case is that Microsoft did not provide the remedy it had promised him in the Warranty.  This is an action to enforce that promise and to secure Microsoft's Warranty performance.  For that reason, it is unclear why plaintiff now injects a host of esoteric issues under Washington law to attempt to invalidate the very remedy provision that he has sued Microsoft to enforce.  Such contentions muddy the waters, but do not appear to relate to the basis of plaintiff's Complaint.  Nonetheless, the Court will address them fully.

substantive value of his bargain, irrespective of whether the defect was discoverable or not.[15] The Court will not void the limited remedies clause on this basis.

Second, plaintiff cites Washington law for the proposition that evidence of bad faith or negligence by a seller in applying its limited remedy can show that a remedy fails of its essential purpose. (Opposition Brief, at 17.) But plaintiff alleges no facts and presents no evidence that Microsoft has shown bad faith or negligence in applying the limited remedy to White.[16] There is overwhelming record evidence to the contrary. Indeed, all of the evidence before the Court is that Microsoft scrupulously and repeatedly endeavored to live up to its warranty obligations to White, by twice sending him shipping containers and repeatedly requesting that he send in his allegedly defective game console for inspection, all within the 90-day warranty period. Yet White rebuffed these efforts and refused to send in his unit. If there was any negligence or bad faith in the application of the Warranty, it rests with White, not with Microsoft.

Third, plaintiff cites case law from jurisdictions other than Washington for the proposition that a limited remedy fails of its essential purpose when the remedy provision proves

---

[15]     Plaintiff apparently is seizing on the "latent defect" aspect of *Cox* and ignoring the actual reasoning of that decision. *Cox* absolutely does not stand for the proposition that a limited remedy fails of its essential purpose anytime a latent defect is involved. Rather, it is only when <u>both</u> a latent defect exists <u>and</u> the limited remedy would destroy the substantive value of the plaintiff's bargain that the remedy clause may be invalidated. The second prong of that requirement clearly has no application to White's circumstances.

[16]     At most, plaintiff suggests that Microsoft engaged in bad faith because the defect was known to it before the Xbox 360 reached the marketplace and because Microsoft falsely characterized customer complaints as mere "isolated instances." (Opposition Brief, at 17; Supplemental Brief, at 6.) These factual allegations are irrelevant to the issue at hand. That Microsoft may have negligently launched its product sheds no light on whether it was negligent in complying with its warranty commitments to dissatisfied customers. That Microsoft has issued public-relations statements that place a favorable spin on its difficulties with this product says nothing about whether Microsoft has observed and followed through on its warranty commitments. That one (and only one) customer service representative with whom plaintiff spoke denied widespread problems with the Xbox 360 is not probative of whether Microsoft would observe and perform its warranty obligations in good faith. Plaintiff's reasoning on this point is opaque. In any event, the undisputed evidence before the Court is that Microsoft went to great lengths to perform under the Warranty as to White, so no inference of bad faith or negligence in application of warranty commitments may reasonably be inferred.

futile.  On that basis, plaintiff asserts that "if circumstances suggest Microsoft had no intention of remedying a mass-produced latent defect, there may be triable issues of fact as to the failure of Microsoft's proffered remedy provision." (Opposition Brief, at 18.)[17]  Assuming that Washington courts would recognize such a futility exception, White's assertion remains unpersuasive precisely because there are no circumstances suggesting that Microsoft had no intention of remedying reported defects in its Xbox 360 game console.  Quite the contrary, there is abundant evidence that Microsoft went to extensive lengths to attempt to remedy the alleged defect in White's game console, but that he refused to cooperate.  There are no triable issues of fact that Microsoft's limited remedy was futile as to White, so this argument cannot salvage his express warranty cause of action.[18]

As his fourth basis for challenging the viability of Microsoft's limited remedy clause, White argues that "[i]f Microsoft is proven to have failed to utilize appropriate efforts to resolve the problem, there may also be a question of whether circumstances caused the remedy provisions to fail of [their] essential purpose." (Opposition Brief, at 19.)  Once again, plaintiff asks the Court to engage in counterfactual speculation on his behalf.  The Warranty obligated

---

[17]     Plaintiff's supplemental brief emphasizes that he received no relief on the Warranty even after speaking with three Microsoft customer service representatives, a supervisor, a receptionist, and the voice mail for a "VP of Team Xbox." (Supplemental Brief, at 5.)  Under the circumstances, he says, there was a "clear message [that] Microsoft had no intention of honoring the terms of its limited warranty provision." (*Id.*)  This narrative omits the key fact that on the first day White communicated his concerns to Microsoft, the company immediately sent him a shipping carton so that he could return his unit for warranty service, but that White refused to do so.  The "clear message" in these facts is that White wanted Microsoft to take action above and beyond its warranty obligations, and that he refused to allow Microsoft to perform under the Warranty.  These facts cannot support an inference that the Warranty failed of its essential purpose for futility reasons.

[18]     It appears that White is speculating that <u>if</u> he had submitted his Xbox 360 to Microsoft for warranty service, it would not have remedied the defects in his game console, but would have simply returned to him the same or a similar unit with the same or a similar defect.  Because of White's own actions and decisions, we will never know what Microsoft would have done.  Having failed to allow Microsoft to perform its warranty obligations, White's present conjecture -- that it would have been futile to do so because Microsoft would not have done anything to rectify the situation anyway -- is devoid of any evidentiary foundation and will not be indulged by this Court.

-12-

Microsoft, once a defective unit had been sent to it, to use "commercially reasonable efforts to diagnose and attempt to correct, or suggest solutions for, Xbox Product defects that are covered by this Limited Warranty." (King Decl., Exh. A at p. 6.) As previously mentioned, we will never know whether Microsoft would have honored this commitment had White sent his machine in to the company, because White unilaterally rejected multiple requests that he do so. This Court will not strike down the limited remedy provision as failing its essential purpose based on idle conjecture about what steps Microsoft might not have taken to correct the alleged defect if White had allowed it to inspect and provide warranty service on his unit.

Fifth, plaintiff asserts that the limited remedy clause in the warranty document is "*prima facie* unconscionable as it deals exclusively with the warranty of consumer goods." (Opposition Brief, at 21.) In support of this proposition, White cites a raft of cases interpreting Washington law concerning the enforceability of limitations of consequential damages. *See Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427, 435 (6th Cir. 1983) (applying Washington law); *American Nursery Products, Inc. v. Indian Wells Orchards*, 797 P.2d 477, 480-81 (Wash. 1990). But the enforceability of the limitation of consequential damages in the Warranty is not at issue here.[19] There is no indication in the Amended Complaint or plaintiff's other submissions that he seeks consequential damages; rather, he is claiming that Microsoft breached its obligations under the limited remedy clause. Hence, these authorities are irrelevant. More generally, plaintiff's argument appears to invoke the portion of Washington's UCC which provides that "[l]imitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use ... is invalid unless it is proved that the limitation is not unconscionable." Wash. Rev. Code § 62A.2-719(3). But the validity of a limitation of consequential damages for injury to the person is not at issue in this case, and plaintiff offers no argument or authority for the proposition that § 719(3) voids an entire warranty document on unconscionability grounds if the consequential damages limitation

---

[19] On this point, the Warranty states, "To the full extent allowed by law, Microsoft is not liable for any consequential or incidental damages." (King Decl., Exh. A., at 7.)

does not pass muster.[20]  By all appearances, then, this argument is a red herring that does not materially advance plaintiff's position on summary judgment, but merely serves to confuse the issues.[21]

Sixth and finally, plaintiff points to language in Washington's UCC that "[l]imitation of remedy to repair or replacement of defective parts or non-conforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations."  Wash. Rev. Code § 62A.2-719(3).  White argues that discovery will be needed to ascertain the adequacy of Microsoft's repair and replacement facilities in the State of Washington, and that the limitation of remedies portion of the Warranty may therefore be invalid.  (Opposition Brief, at 22.)  But the Warranty does not limit a consumer's remedy to repair or replacement, but expressly outlines a third alternative, namely, refund of the purchase price.  As such, this clause of § 719(3) is inapplicable, and plaintiff's attack on the limited remedy portion of the Warranty predicated on that theory is unavailing.

In short, then, plaintiff has attempted to evade summary judgment on the breach of express warranty cause of action by offering a patchwork collection of ramshackle arguments

---

[20]       In fact, plaintiff argues exactly the contrary proposition, asserting that "[i]f the aforementioned exclusionary provision(s) is determined to be unenforceable, the remainder of the warranty may be enforced."  (Opposition Brief, at 23.)  Given this contention, plaintiff's reasons for attacking the consequential damages limitation in the Warranty are inscrutable, because even if that provision were stricken, the repair/replace/refund remedy provision of the Warranty would remain intact.

[21]       The same conclusion applies to plaintiff's insistence that exclusionary clauses in the consumer sales context must be negotiated.  (Opposition Brief, at 20.)  Plaintiff is correct that Washington law provides that clauses limiting consequential or incidental damages are not enforceable in consumer transactions unless they are "explicitly negotiated between buyer and seller, and the remedies being excluded must be set forth with particularity."  *American Nursery*, 797 P.2d at 481 (citation omitted).  Plaintiff is also correct that the record establishes no negotiation between Microsoft and White as to the Warranty.  But this argument does not help plaintiff's position on summary judgment.  The enforceability of any limitation on consequential or incidental damages is not at issue in this case; therefore, the lack of negotiation as to that clause sheds no light on the summary judgment analysis.

under Washington law that are by turns inapplicable or irrelevant to the undisputed facts presented here.  Such grasping at straws may complicate the analysis, but it offers no basis on which a reasonable factfinder might conclude that Microsoft has breached its warranty service obligations, as plaintiff has pleaded in Count II of the Amended Complaint.

2. *Evidence of Microsoft's Performance under Warranty.*

Having addressed plaintiff's threshold legal objections to the limited remedy portion of the Warranty, the Court now considers whether the record supports a reasonable inference that Microsoft has failed to comply with its obligations under that limited remedy provision.  White purchased his Xbox 360 game console on November 23, 2005, the date of the product's launch in U.S. retail stores.  The record reflects that on December 2, 2005 (on or close to the first time that White expressed any dissatisfaction with his game console), Microsoft sent him a prepaid shipping carton and requested that he return the unit for warranty service.  That carton arrived at White's home on December 5, 2005, yet White never boxed up and sent his console to Microsoft.  Plaintiff's explanation for this omission is that he did not think it fair to wait 10-14 days for Microsoft to service his game console, especially if Microsoft might replace his unit with a previously used and rebuilt unit (rather than a brand-new machine).  According to White, "what I really wanted was a new and unused game console if Microsoft was really serious about compensating me for my inconvenience."  (White Decl., at 9.)  Plaintiff's supplemental brief expounds on this theme, asserting that "Microsoft's limited warranty provision says nothing about replacement with a used or rebuilt unit," that "Microsoft's own warranty does not specify what it could replace a defective Xbox with at all," and that it was "certainly reasonable for a consumer such as the plaintiff to conclude Microsoft would replace his new and defective Xbox unit with a new and non-defective Xbox unit."  (Supplemental Brief (doc. 37), at 4-5 & n.2.)

These arguments are inconsistent and irreconcilable with the plain language of the Warranty.  After listing the repair, replace or refund options, the very next paragraph of the Warranty reads as follows: "Any replacement parts or Xbox Product will be ***new or refurbished or serviceably used***, ***comparable in function and performance to the original part or Xbox Product*** and warranted for the remainder of the original Warranty Period or 30 days from the date of shipment of the Xbox Product back to you, whichever is longer." (King Decl., Exh. A, at 6 (emphasis added).)  Thus, plaintiff's arguments misrepresent the evidence and raise substantial

-15-

questions as to whether he ever read the Warranty that he is ostensibly suing to enforce.  As plaintiff's sole theory for breach of warranty is that Microsoft lacked the right to replace his Xbox 360 with a used and rebuilt machine, and as the Warranty unequivocally authorizes Microsoft to do precisely that, and as plaintiff refused to allow Microsoft to perform under the Warranty, no reasonable finder of fact could conclude that defendant breached its Warranty commitments to plaintiff.  On the undisputed summary judgment record, then, White's express warranty claim fails.[22]

### B. Unjust Enrichment Claim.

The Amended Complaint brings a cause of action for unjust enrichment, on the theory that Microsoft was aware of defects in the Xbox 360 game consoles prior to White's purchase of the product, that Microsoft failed to inform White of such defects, and that Microsoft received and unjustly retained payments from White and other consumers who paid for their game consoles in ignorance of the defects.  (Amended Complaint, ¶¶ 32-37.)  Defendant maintains that this cause of action must fail, as a matter of law.

"The doctrine of unjust enrichment is an old *equitable* remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Scrushy v. Tucker*, --- So.2d ----, 2006 WL 2458818, *11 (Ala. Aug. 25, 2006) (citations omitted).  To prevail on such a claim under Alabama law, "the plaintiff must show that the

---

[22]      The analysis becomes even less favorable to White when one considers that in January 2006, still within the 90-day warranty period, Microsoft sent him a <u>second</u> shipping box for his Xbox 360 game console, and he again demurred.  On this occasion, White mentioned nothing about not wanting a refurbished unit.  Rather, he explained that he refused this offer "as it would conflict with his duties as a class representative."  (Amended Complaint, ¶ 8.)  But nothing in White's class representative status excuses him from abiding by the Warranty, which required him to "[f]ollow Microsoft's shipping and other instructions if it determines that all or part of your Xbox Product requires return for repair or replacement."  (King Decl., Exh. A at 5.)  By refusing to do so, White was not performing his duties as a class representative, but was likely disqualifying himself as a class representative by creating unique fact-specific defenses as to him (*e.g.*, his refusal to follow Microsoft's clear instructions for Warranty service).  *See generally Richards v. FleetBoston Financial Corp.*, 235 F.R.D. 165, 173 (D. Conn. 2006) ("class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation"); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 670 (S.D. Ala. 2005) (discussing adequacy requirement of Rule 23(a)(4)).

defendant holds money which, *in equity and good conscience*, belongs to the plaintiff or holds money which was improperly paid to defendant because of *mistake or fraud*." *Id.* (citations omitted); *see also Foshee v. General Telephone Co. of Southeast*, 322 So.2d 715, 717 (Ala. 1975) (explaining that essence of unjust enrichment claim is that defendant is legally or equitably obligated to pay complainant a liquidated sum of money). Claims for unjust enrichment necessarily must be evaluated "on the particular facts and circumstances of each case." *Scrushy*, 2006 WL 2458818, at *11.

    *1. No Unjust Enrichment Claim when Express Contract Exists.*

   There are two distinct legal problems with plaintiff's unjust enrichment theory. First, under Alabama law, it is clear that an unjust enrichment claim sounds in the nature of quasi-contract, as the law equitably implies a contract between the parties to prevent the unjust enrichment of a defendant at the expense of a plaintiff. *See American Family Care, Inc. v. Fox*, 642 So.2d 486, 488 (Ala.Civ.App. 1994) ("Under the doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another....").[23] As such, White's unjust enrichment cause of action operates through the mechanism of an equitably-implied contract between White and Microsoft to reverse any unfair retention of a benefit by the latter to the detriment of the former.[24] But the Alabama Supreme Court has proclaimed "that

---

[23] *See also G.S. Gothard and Son Contractors, Inc. v. Mansel*, 611 So.2d 1101, 1103 (Ala.Civ.App. 1992) ("The remedy of quasi-contract is based upon the established principle of avoiding unjust enrichment."); *Opelika Production Credit Ass'n, Inc. v. Lamb*, 361 So.2d 95, 99 (Ala. 1978) ("The remedy of quasi-contract is founded upon the familiar principle of avoiding unjust enrichment. Where the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff's loss."). By demonstrating that unjust enrichment claims are a species of implied contract claim, these authorities undercut plaintiff's attempts to differentiate his unjust enrichment theory from an implied contract theory. (Opposition Brief (doc. 31), at 5-6.) Unjust enrichment / quasi-contract is a type of implied contract under Alabama law.

[24] In this respect, Alabama unjust enrichment doctrine is moored on the same principles articulated by the Eleventh Circuit's explication of Florida law in *Tooltrend, Inc. v. CMT Utensilit, SRL*, 198 F.3d 802 (11th Cir. 1999), wherein the court explained: "A claim for unjust enrichment is an equitable claim, **based on a legal fiction created by courts to imply a 'contract' as a matter of law.** ... [T]he law will, in essence, 'create' an agreement in situations

where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter." *Kennedy v. Polar-BEK & Baker Wildwood Partnership*, 682 So.2d 443, 447 (Ala. 1996); *see also Vardaman v. Florence City Bd. of Educ.*, 544 So.2d 962, 965 (Ala. 1989) ("existence of an express contract generally excludes an implied agreement relative to the same subject matter"). The reasoning is simple: If the parties' dealings are covered by an express agreement, then there is no need to imply an agreement between them to ward off inequitable results. Based on that principle, where a plaintiff has brought claims sounding in both express contract and quasi-contract as to the same subject matter, Alabama courts have deemed the quasi-contract claim not to be cognizable. *See Callaway v. E.H. Smith Elec. Contractors, Inc.*, 814 So.2d 893, 899 (Ala.Civ.App. 2001) (affirming dismissal of quasi-contract claim based on existence of valid, binding contract between parties).

Here, an express contract (the Warranty) governs the parties' relationship and covers the precise issues as to which White is asking the Court to imply a contract to prevent wrongful retention of funds. Because an express contract covers the same subject matter and affords White complete relief from any injustice arising from Microsoft's retention of his payment for a malfunctioning game console, it is unnecessary to indulge the legal fiction of implying such a contract to avoid an inequitable outcome, and the principles enunciated in *Vardaman* and *Kennedy* militate heavily in favor of dismissal of the unjust enrichment claim.

Plaintiff objects to this reasoning, positing that Alabama courts have allowed breach of contract and unjust enrichment claims to coexist. *See Avis Rent A Car Systems, Inc. v. Heilman*, 876 So.2d 1111, 1120-23 (Ala. 2003). But there is no indication in *Avis* that the parties had raised any question as to the propriety of plaintiff's bringing both breach of contract and unjust enrichment causes of action, nor did the Alabama Supreme Court *sua sponte* interject that issue into the case. That there may be isolated instances in Alabama jurisprudence in which contract and quasi-contract claims have proceeded side-by-side, without objection by any litigant, is unilluminating in the absence of analysis or ruling by courts in those cases as to the propriety of

---

where it is deemed unjust for one party to have received a benefit without having to pay compensation for it. It derives, not from a 'real' contract but a 'quasi-contract.'" *Id.* at 805 (emphasis added). Alabama law works exactly the same way.

that mode of pleading, particularly where *Kennedy*, *Vardaman* and *Callaway* contain clear guidance to the contrary.  Additionally, White would elude the grasp of the *Kennedy* line of precedent by suggesting that there was no express contract between the parties.  In that respect, plaintiff is correct that "the law may recognize an implied contract where the existence of an express contract on the same subject matter is not proven."  *Kennedy*, 682 So.2d at 447.  White argues that triable questions remain on this front, as to whether the Warranty "constitute[s] a valid manifestation of the parties' intent" and whether "Microsoft's limited remedy is invalid and unenforceable."  (Opposition Brief, at 8.)  However, the Court has already found, *supra*, that the express warranty was a valid and enforceable contract as between Microsoft and White.  As such, the exception on which White would rely is inapplicable here, and his unjust enrichment claim is barred under Alabama law.[25]

> ### 2.    *No Facts that Might Support an Unjust Enrichment Claim Here.*

Even if White's unjust enrichment claim were not obviated by the existence of an express contract relating to the same subject matter, Microsoft would still be entitled to judgment in its favor as a matter of law on that cause of action.  As discussed *supra*, White's theory is that Microsoft had knowledge of defects in the Xbox 360, but foisted it on unsuspecting customers

---

[25]    As an aside, given the class-action orientation of this action, plaintiff's attempt to pursue classwide relief on an unjust enrichment theory is puzzling.  The Alabama Supreme Court has spoken out emphatically against certification of a class in the unjust enrichment context.  *See Avis*, 876 So.2d at 1123 ("Because unjust-enrichment claims are fact specific to each case, this Court has repeatedly held that such claims are unsuitable for class-action treatment" because of the need for "an individualized inquiry into the subjective 'state of mind' of each class plaintiff").  Plaintiff protests that his unjust enrichment claim is suitable for class treatment, without individualized inquiries as to state of mind, because Microsoft's act of allegedly knowingly placing defective products on the market "was not something class members could have known or had reason to know at any time prior to purchasing the product."  (Opposition Brief, at 7 n.2.)  But plaintiff's own evidence refutes this contention.  Indeed, White has submitted a 290-page printout of Internet public forum discussions between November 21, 2005 and December 3, 2005, in which numerous consumers document in detail the chronic malfunctioning of their Xbox 360 units.  Surely, any consumer who viewed similar or similar Internet message bulletin boards, or who had similar discussions about the product, may have known or had reason to know that the Xbox 360 game console was defective before purchasing it.  Thus, plaintiff's own evidence underscores the need for individualized inquiry into state of mind issues as to the unjust enrichment claim, and constitutes a formidable roadblock to any Rule 23 certification of that cause of action.

anyway, reaping ill-gotten financial gains in the process.  There is no evidence that Microsoft was aware of manufacturing or design defects in the Xbox 360 before the product's launch, nor is there evidence that White had no reason to believe the product was defective before he bought it.  Even assuming such evidence could be developed in discovery, however, the record conclusively establishes that Microsoft is not in possession of funds from White that do not, in equity and good conscience, belong to it.  Microsoft, through the intermediary of a big-box retailer, sold a game console to White.  When White reported that the game console did not work properly, Microsoft repeatedly invoked Warranty procedures to service his unit.  But White derailed those procedures by refusing to cooperate.  If White continues to hold a defective Xbox 360 machine in his possession, it is only because he has refused to allow Microsoft to correct the problem in accordance with the Warranty.

Simply put, plaintiff has made a voluntary choice to keep his purportedly defective game console, and to obstruct Microsoft's corrective action.  While Microsoft continues to hold money from the sale to White, these facts can support no reasonable inference that it is wrongfully withholding funds or that it has been unjustly enriched at White's expense.  It sold a game system to a consumer.  When the consumer complained that the system did not work properly, defendant acted promptly under the Warranty to correct the problem, but plaintiff refused to allow it to do so.  Under these circumstances, whatever money Microsoft may possess from the White transaction is money that legally and equitably belongs to it.  It is, of course, a complete defense to an unjust enrichment claim that a defendant is not in possession of money that does not rightfully belong to it.  *See Dickinson v. Cosmos Broadcasting Co.*, 782 So.2d 260, 266 (Ala. 2000); *see also Hancock-Hazlett General Const. Co. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986) (finding that defendant was not unjustly enriched, as a matter of law, where the only money it retained was funds covering the price of equipment it furnished to plaintiff).  In the Court's view, this defense is fatal to White's unjust enrichment claim, because Microsoft is not holding any funds that equity and good conscience demand should be turned over to White.[26]

---

[26]     The underlying point here is that Microsoft has not treated White inequitably. Had White cooperated with the warranty process and still been left with a defective, malfunctioning Xbox 360, or had Microsoft stiff-armed his inquiries, then plaintiff might have had a colorable claim that Microsoft had been unjustly enriched.  But it stretches the concept of

### C.   *Implied Warranty Claim.*

Plaintiff's third and final cause of action is a claim for breach of the implied warranty of fitness for a particular purpose, because White's Xbox 360 is allegedly incapable of operating without crashing and damaging game discs.[27]   Alabama law makes short shrift of this theory.   It is black-letter law "that a claim for breach of an implied warranty is not available against a manufacturer who was not involved in the transaction pursuant to which the complaining party purchased the product."   *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1087 (Ala. 2003).   Indeed, "[t]here is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract."   *Id.* (citing *Wellcraft Marine v. Zarzour*, 577 So.2d 414, 419 (Ala. 1990)); *see also Johnson v. Anderson Ford, Inc.*, 686 So.2d 224, 227-28 (Ala. 1996) (explaining that in cases of strictly economic harm, absence of the privity of contract that arises from buyer/seller relationship "is fatal to an implied warranty claim under either § 7-2-314 or § 7-2-315").   Here, it is undisputed that plaintiff did not purchase his Xbox 360 directly from Microsoft, and plaintiff is not claiming personal injury arising from the alleged breach of warranty.   Under Alabama law, then, the requisite vertical privity is absent, and plaintiff's implied warranty cause of action is not cognizable, as a matter of law.

Against this impregnable wall of precedent, White does not dispute that Alabama law would be fatal to his implied warranty claim.   Instead, he urges the Court to apply Washington law, pursuant to the choice of law provision in the Warranty.   However, plaintiff offers no explanation for why a Washington choice of law clause in an <u>express</u> warranty would mandate application of Washington law to a claim of breach of <u>implied</u> warranty.[28]   As discussed *supra*,

---

unjust enrichment beyond the breaking point for a plaintiff to demand recompense for a consumer transaction in which he purchased a product that apparently does not work properly, where he has rebuffed the manufacturer's repeated attempts to correct the problem pursuant to a written warranty.   Equity does not provide succor to a plaintiff who has refused and obstructed the defendant's attempts to come to his aid.

[27]     Although not stated in the Amended Complaint or the briefs, plaintiff is apparently invoking an Alabama statute which requires that goods are impliedly warranted to be "fit for the ordinary purposes for which such goods are used."   § 7-2-314(2)(c).

[28]     Rather than justifying his invocation of Washington substantive law for this cause of action, plaintiff obliquely notes that it is "indeed curious that Microsoft finds respite in

the written warranty contains a statement that "the laws of the State of Washington, U.S.A., will apply to this Limited Warranty."  (King Decl., Exh. A at 7.)  But nothing in the Warranty purports to confine any implied warranty claims a consumer might bring, aside from and in addition to claims for breach of the Warranty, to Washington law.  To the contrary, the Warranty states that "[y]ou may also have an implied warranty and/or condition *under the laws of some jurisdictions*."  (*Id.* at 5 (emphasis added).)  Had the Warranty provided that implied warranty claims would be governed by Washington law, there would have been no reason to mention laws of other jurisdictions in connection with such implied warranties.  Likewise, the written warranty recognizes that "*you may also have other rights which vary from jurisdiction to jurisdiction*," (*Id.* at 7 (emphasis added)), which rights would unquestionably include the implied warranty claim that White asserts here.  Again, had Microsoft intended to subsume all implied warranty claims under the rubric of Washington law, there would have been no reason to reference other jurisdictions on that point.  In short, plaintiff's attempt to weld the choice of law provision in an express warranty to claims for breach of implied warranty that clearly arise outside of, and apart from, such express warranty is improper and unsupportable.  There is no written agreement between the parties purporting to apply Washington law to any implied warranty claims.

Under Alabama's version of the UCC, Alabama law "applies to transactions bearing an appropriate relation to this state."  Ala. Code § 7-1-301(b).  Inasmuch as White purchased his Xbox 360 in Alabama, used his Xbox 360 exclusively in Alabama, dealt with Microsoft from Alabama, and sued Microsoft in Alabama, this transaction obviously bears an appropriate relation to the state of Alabama for choice of law purposes.  Indeed, Alabama's contacts to this action are far more significant than those of Washington or any other forum.  For this reason, Alabama law applies to the implied warranty claim, and plaintiff's recitation of Washington case law concerning the vertical privity requirement in the implied warranty context is irrelevant.  Under Alabama law, it is abundantly clear that White cannot pursue breach of implied warranty

---

Alabama's law" after applying Washington law to the express warranty claim.  (Opposition Brief, at 23 n.7.)  There is nothing curious about defendant's actions in this regard.  Application of Washington law to a warranty claim pursuant to a choice of law provision in that warranty would in no way mandate, encourage or support application of Washington law to an implied warranty claim separate and apart from that express warranty.

claims against Microsoft (with whom he was not in vertical privity) for mere economic or property damage.  Thus, plaintiff's implied warranty claim is not cognizable.

**V.     Conclusion.**

For all of the foregoing reasons, the undersigned concludes that there are no genuine issues of material fact, and that defendant Microsoft Corporation is entitled to entry of judgment in its favor as a matter of law.  Accordingly, Microsoft's Motion to Dismiss (doc. 24), which the Court converted to a motion for summary judgment on August 3, 2006, is **granted** and plaintiff's claims against defendant are **dismissed with prejudice**.  A separate judgment will enter.

DONE and ORDERED this 18th day of September, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE